## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. MOATS | : | CIVIL NO: **3:14-CV-00411** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| | : | |
| Defendant. | : | |

## <u>REPORT AND RECOMMENDATION</u>

## I.    INTRODUCTION.

On March 5, 2014, Plaintiff David E Moats filed, through counsel, a Complaint appealing the final decision denying his Title II application for disability insurance benefits ("DIB"). (Doc. 1).  This matter has been referred to the undersigned Magistrate Judge for preparation of a report and recommended disposition.  This Court has jurisdiction over this case pursuant to 42 U.S.C. §405(g).  For the reasons stated herein, we recommend that the final decision of the Commissioner denying Plaintiff's claim be **VACATED** and **REMANDED**.

## II.    BACKGROUND & PROCEDURAL HISTORY.

On August 9, 2010, Plaintiff, a 46 year old inventory control specialist protectively filed his application for DIB alleging disability due to neck injury, mental illness and allergy.  (TR 223). Plaintiff asserts that he became unable to work due to his conditions on March 29, 2010.  The record reflects, however, that the instant application was not Plaintiff's first application for benefits.  Plaintiff previously applied for, and received, a closed period of disability from

February 2, 2005, though July 1, 2007, due to the combination of chronic pain as a result of cervical degenerative disc disease and severe depression and anxiety.  On July 2, 2007, Plaintiff returned to full-time work with no significant medical restrictions.

Plaintiff filed this, his second, application for benefits after he was separated from his employment on March 29, 2010, due to what he believes were performance issues as a result of a reoccurrence of the conditions that previously rendered him disabled.  (TR 35). Specifically, Plaintiff testified that his employer let him go because he frequently (two times per month) left work to attend doctor's appointments, and because he gradually began to have increased difficulty concentrating, staying awake, and remembering until he was no longer able to meet his work quotas.  (TR 37-38).  Plaintiff also reported, however, that at least one other employee was let go on the same day.  *Id.*  Following the termination of his employment, Plaintiff reported that he collected unemployment benefits  for most of 2010 and, as is required to qualify for unemployment, he certified that he was able and available to work.  (TR 66-67, 197-98).  When asked what type of work he was able and available to perform, he reluctantly admitted that he would have been able to talk to people on the phone during the period of time he filed for unemployment, but that he thought it "probably wouldn't have worked out." *Id*.

Plaintiff's application for benefits was initially denied on February 2, 2011. At Plaintiff's request, a hearing was held before ALJ Sharon Zanotto in Harrisburg, Pennsylvania on July 16, 2012.  Plaintiff appeared at the hearing with counsel and testified about the his impairments. Plaintiff testified that as a result of prior motor vehicle accidents he experiences pain in his

cervical spine that radiates to his head, shoulders and down his spine to C7.  (TR 46-47).  He reported that the performance of tasks that require him to reach in front of his body, like doing dishes, or reaching above his head causes him pain in both arms. (TR 47).  He also testified that he experiences pain when moving his head up and down or left to right, when he bends or stoops, and when he lifts or carries objects. (TR 48).  Plaintiff stated that  he experiences discomfort after sitting for long periods, and needs to get up and walk around.  *Id.* He asserted that he could occasionally drive short distances but relies on his companion, Margaret Kelly, to drive him to medical appointments and to the grocery store because he feels it is unsafe to drive for greater distances due to his seizure disorder.   Plaintiff testified that his mental impairments result in agoraphobia, and that he rarely leaves his second floor walk-up apartment. (TR 34, 41-42).

With respect to his activities of daily living, Plaintiff gave several different accounts. Initially, Plaintiff testified that, even though he lives alone, he does not do any household chores as a result of his impairment.  (TR 34, 61).  He later recanted his statement, however, and admitted that he occasionally cleans a few dishes but otherwise uses disposable dishware, is able to microwave frozen dinners, clean his bathroom, and is able to take out his trash in small two to three-pound bags. (TR 61-66).  Plaintiff also explained that Ms. Kelly visits his apartment five times per month to bring him groceries or take him shopping, do his laundry, and drive him to medical appointments.  (TR 44-45, 57).  He asserted, however, that he has not dusted, swept, or mopped his apartment since he moved in due to his depression.  (TR 64).

The medical evidence of record, as developed before the ALJ, reflects that Plaintiff's

treatment was conservative with routine visits for medication management.  Notably, Plaintiff received very little medical or psychiatric care during the relevant period, and asserted that this was due to a lack of medical insurance. Plaintiff obtained new insurance, and was reportedly in the process of re-establishing care, on the date of his administrative hearing. Plaintiff's longtime treating physician, Richard Prensner, M.D., reported that Plaintiff's problems of chronic pain, hypercholesterolemia and epilepsy were "stable" in April 2010.  (TR 274).  The most recent MRI imaging dated April 2005 reveals shallow osteophytes and mild foraminal narrowing at C3-C4, C5-C6, and C6-C7, but no evidence of herniation or impingement.  (TR 341).  Further, January 2011 examination records reflect that Plaintiff had full strength in all of his extremities, was able to get on and off the examination table and ambulate normally without difficulty.  (TR 328).  Treatment records reflect that Plaintiff's pain was considerably lessened by narcotic medications; however, some side-effects were noted, including memory issues and impaired ability to concentrate.  Plaintiff's medical records also reflect that he has a history of seizures.  On November 13, 2009, however, Dr. Prensner noted that Plaintiff's seizures were well-controlled by medication, and that his last seizure was in May 2008.  (Tr. 281, 503).

On July 9, 2012, to assist the ALJ in her determination, Certified Registered Nurse Practitioner ("CRNP") Allison Pra, a source who reportedly treated Plaintiff at Kline Health Center, completed a medical source statement on Plaintiff's behalf.[1]  CRNP Pra opined that

---

[1]We note that CRNP Pra is not an "acceptable medical source" as it is defined by the Social Security Regulations.  *See* 20 C.F.R. §1513(d)(1); *see also* SSR 06-3p, 2006 WL 2329939 at *3 (recognizing that nurse practitioners are medical sources that are not "acceptable medical sources").  Though information from "other sources," like CRNP Pra cannot establish the existence of a medically determinable impairment, opinions from medical sources who are not

Plaintiff could: occasionally and frequently lift up to ten pounds; stand or walk for four hours per eight-hour workday; sit up to eight hours per workday with a sit-stand opinion permitting him to stand or walk for five minutes after every thirty minutes spent sitting; push or pull with his lower extremities on a slightly less than frequent basis (50% of the workday); occasionally stoop or squat, and push or pull with his arms or lift with his arms in front of his body on a slightly less than occasional basis (25% of the workday); reach overhead on a less than occasional basis (10% of the workday); and never twist or climb.  (TR 579-80).  CRNP Pra also opined that Plaintiff should avoid concentrated exposure to extreme heat, extreme cold, wetness, hazards or heights, fumes, odors, dust or poor ventilation, and noted that Plaintiff would require approximately four ten-minute breaks in excess of those customarily provided in an eight-hour workday (i.e. two fifteen-minute breaks and a thirty-minute lunch, or one sixty-minute lunch).  *Id.*  CRNP Pra also noted that Plaintiff would also likely miss more than two days of work per month either attending medical examinations or due to the symptoms of his impairments.  *Id.*

---

technically acceptable medical sources under the Social Security regulations are important and should be evaluated in assessing the functional effects and severity of impairments.  SSR 06-3p, 2006 WL 2329939 at *3.  Furthermore, although the Social Security regulations do not explicitly address how to evaluate opinions from "other sources," the factors outlined in 20 C.F.R. §404.1527 can be applied to opinion evidence from "other sources" – like CRNP Pra.  *Id.* at *4.

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because acceptable medical sources are considered to be "the most qualified health care professionals."  *Id.* at *5.  In some cases, however, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an acceptable medical source when the regulatory factors are applied.  *Id.*

On January 25, 2011, Plaintiff was examined by Brian D'Eramo, D.O., upon the request of the Social Security Administration.  Following his examination, Dr. D'Eramo completed a narrative report and check-box RFC assessment regarding Plaintiff's ability to perform basic physical work activities.  (TR 325-34).  Dr. D'Eramo assessed that Plaintiff suffered from the conditions of headache (secondary to cervical spine), Pain (secondary to prior motor vehicle accidents), history of seizure disorder (last seizure in 2007), anxiety, depression, and memory and concentration issues (due to his head and cervical spine injuries and medication side-effects).  (TR 328-29).  He also noted that Plaintiff had a normal range of motion in all of his joints.  (TR 331-32).  Dr. D'Eramo opined that Plaintiff could: occasionally lift twenty pounds and frequently lift or carry ten pounds; stand or walk for  six hours or more per eight-hour workday; sit without restriction; frequently bend; occasionally stoop, crouch or kneel; and never balance or climb.  (TR 333-34).  Dr. D'Eramo also recommended that Plaintiff avoid exposure to heights, moving machinery and temperature extremes.  *Id.*  Like CRNP Pra, Dr. D'Eramo also found that Plaintiff was limited in his ability to push and pull with his upper extremities, but unlike CRNP Pra, he found that Plaintiff was not limited in his ability to reach. *Id.*

With respect to his mental impairments, the medical record, as developed before the ALJ, reflects that Plaintiff's anxiety and depression were treated by TW Ponessa & Associates between June 15, 2006 and early December 2008 where he received a combination of counseling and medication management.  On December 10, 2008, Plaintiff was informed that his prescriptions would not be refilled until he saw his psychiatrist for medication management.

(TR 550).  On February 2, 2009, Plaintiff called Dr. Prensner's office to ask whether his primary care physician could prescribe his psychiatric medications until he found a new psychiatrist because his insurance changed.  (TR 288).  Plaintiff was officially discharged as a patient from T.W. Ponessa & Associates in February 2010, more than one year after his last therapy session and medication check, for "client non-compliance."  (TR 294).

December 29, 2010, to assist the ALJ in making her determination, Plaintiff was examined by M.R. Picciotto, M.D., upon the request of the Social Security Administration. Following this examination, Dr. Picciotto completed a narrative report and medical source statement regarding Plaintiff's ability to perform basic mental work activities.  (TR 303-10).  Dr. Picciotto reported the diagnostic impression of depression (secondary to a general medical condition), cannabis abuse (currently in remission) and cocaine abuse (currently in remission). (TR 309).  Dr. Picciotto also noted that, during the examination, Plaintiff displayed an euthymic mood and appropriate affect, good long and short term memory, and good concentration.  *Id.* In the accompanying medical source statement, Dr. Picciotto noted that Plaintiff had no limitation in his abilities to understand, remember or carry out simple or detailed instructions, or make judgments on simple work-related decisions.  (TR 304).  He did note, however, that Plaintiff was slightly restricted in his ability to interact appropriately with the public, supervisors and co-workers, and was moderately restricted in his ability to respond appropriately to work pressures in the usual work setting.  *Id.*

After reviewing Dr. Picciotto's report and records of Plaintiff's medical and psychiatric treatment, state agency consultant Michael Suminski, Ph.D., completed a psychiatric review.

(TR 311-23).  He opined that the medical evidence of record established the existence of a medically determinable impairment due to Depressive Disorder NOS, but concluded, based on the history of conservative outpatient treatment and activities of daily living, that Plaintiff suffered from minimal impairment due to this condition.  (TR 323).

On September 28, 2012, based on the above-mentioned evidence, the ALJ issued a decision denying Plaintiff's application.  Following the ALJ's decision denying his claim, Plaintiff sought review of the ALJ's decision denying his applications for benefits by the Appeals Council, and supported his request for review with additional medical evidence that was not before the ALJ when she issued her decision.  On January 6, 2014, the Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's September 28, 2012, decision is the "final decision" of the Commissioner subject to judicial review by this Court pursuant to 42 U.S.C. §405(g).

Plaintiff requested judicial review from this Court by filing a Complaint on March 5, 2014.  (Doc. 1).  The Commissioner filed her Answer on May 9, 2014.  (Doc. 10).  Together with her Answer, the Commissioner filed a copy of the administrative record.  (Doc. 11).  This matter has been fully briefed by the parties, and is now ripe for review by this Court.  (Docs. 16, 17, 18).

## III.    THE ALJ'S DECISION.

It is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42U.S.C. §423(d)(1)(A).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his [or her]
> physical or mental impairment or impairments are of such severity that he [or
> she] is not only unable to do his [or her] previous work but cannot, considering
> his [or her] age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless of
> whether such work exists in the immediate area in which he [or she] lives, or
> whether a specific job vacancy exists for his [or her], or whether he [or she]
> would be hired if he [or she] applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which exists in the national
> economy" means work which exists in significant numbers either in the region
> where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).  Last, to qualify for benefits under Title II of the Social Security Act, a

claimant must also show that he or she has not attained retirement age, contributed to the

insurance program, and became disabled prior to the date on which he or she was last insured.

42 U.S.C. §423(a); 20 C.F.R. §404.131.

In order to assess whether a claimant meets the above statutory requisites, the ALJ

employs a five-step sequential evaluation process.[2] Here, the ALJ found that Plaintiff met the

---

[2]The five-step sequential evaluation process requires the ALJ to sequentially determine:
(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has
a severe impairment; (3) whether the claimant's impairment meets or equals a listed
impairment; (4) whether the claimant's impairment prevents the claimant from doing past
relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any
other work.  *See* 20 C.F.R. § 404.1520.  If the Commissioner finds that a claimant is disabled
or not disabled at any point in the sequence, review does not proceed any further.  *See* 20
C.F.R. §404.1520.  Moreover, between steps three and four of this process, the ALJ must
determine the claimant's residual functional capacity ("RFC") as defined by 20 C.F.R.
§404.1545. 20 C.F.R. §404.1520(e).

The claimant bears the initial burden of demonstrating a medically determinable

insured status requirement under the Act through September 30, 2013, and proceeded through each step of the five-step sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 29, 2010, his alleged onset date. (Tr. 14).

At step two, the ALJ found that Plaintiff had medically determinable severe impairments due to Degenerative Disc Disease of the Cervical Spine and Seizure Disorder, and that Plaintiff had suffered from these ailments for more than twelve continuous months. (Tr. 14). The ALJ also found, however, that Plaintiff's medically determinable impairments of panic disorder with agoraphobia, depressive disorder NOS, and adjustment disorder with depression and anxiety did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, thus were non-severe. *Id.* The ALJ based her conclusion that Plaintiff's mental impairments were non-severe on her findings that Plaintiff's mental impairments resulted in only mild limitations in the first three functional areas used to evaluate mental impairments (activities of daily living, social functioning, and concentration, persistence or pace) and no limitation in the fourth (repeated episodes of decompensation of extended duration). *See* 20 C.F.R. §404.1520a(d)(1))("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your

---

impairment that prevents him or her from doing past relevant work. 42 U.S.C. §423(d)(5)(A); 20 C.F.R. §§404.1512; *Mason v. Shalala*, 994 F.2d 1058, 1064(3d Cir. 1993). Once the claimant has established at step four that he or she cannot do past relevant work, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her age, education, work experience and RFC. 20 C.F.R. §§ 404.1512(f); *Mason*, 994 F.2d at 1064.

impairment(s) is not severe...").[3]

At step three the ALJ found that Plaintiff's impairments, considered individually or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P Appendix 1.  (Tr. 15).

Before continuing on to step four, the ALJ assessed Plaintiff's RFC based on the evidence of record, which included Plaintiff's subjective testimony, statements by Margaret Kelly (one of Plaintiff's close friends), diagnostic imaging, medical examination records, a medical source statement by certified CRNP Pra, an examination report and medical source statement prepared Brian D'Eramo, D.O. that was commissioned by the Social Security Administration. Based on this evidence, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) except that:

> the claimant can occasionally and frequently lift up to 10 pounds, can stand and walk up to 4 hours in a day; can sit for up to 8 hours with the need to alternate between sitting and standing every 30 minutes; must avoid twisting completely; can occasionally stoop and squat; must avoid concentrated exposure to various environmental concerns, including dusts, fumes, humidity, odors, gases, chemicals, temperature extremes and wetness; must avoid all exposure to moving machinery and unprotected heights; limited to occasional pushing and pulling bilaterally with the arms and frequently with the legs; limited to understanding, remembering, and carrying out simple instructions based upon allegations of difficulty concentrating due to pain and medications; occasional

---

[3]Plaintiff also asserts that the ALJ erred at step two when she found that Plaintiff's mental impairments were non-severe.  He alleges that this error resulted in prejudice at step five of the ALJ's assessment because the ALJ failed to account for the full extent to which Plaintiff's inability to concentrate and difficulty interacting with others.  We find, however, that substantial evidence  supports the ALJ's conclusion that there is no documented concentration or focus problem as a result of his mental impairments, and no evidence pertaining to any deficit in the area of social functioning pertaining to the relevant period.  Accordingly, we find that this argument lacks merit.

interaction with supervisors, coworkers and the public due to his alleged difficulty getting along with others; and occasional work setting changes; and occasionally decisionmaking and judgement due to concentration problems.

(Tr. 16).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a warehouse worker (medium, unskilled), and computer support specialist (heavy, skilled) because his current abilities precluded him from performing more than a limited range of light work. (Tr. 18). The ALJ also found that Plaintiff was also unable to perform his past relevant work as a courier (sedentary, unskilled) because it would require exposure to moving machinery. *Id.*

At step five, the ALJ found that considering Plaintiff's age, greater than high school education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. The ALJ based his findings on testimony by a VE. At the hearing, a VE testified that an individual of Plaintiff's age, with the same education, relevant work experience, and RFC, could perform the representative occupations of: Bonder, Semiconductor (DOT 726.685-066); Bakery Worker, conveyor line (DOT 524.687-022); and, Machine Tender, plastics industry (DOT 556.685-038).

## IV.   STANDARD OF REVIEW.

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

V.    **DISCUSSION.**

Plaintiff argues that substantial evidence does not support the ALJ's step five determination that he is able to perform "other work," in large part, because the ALJ's conclusion is based upon an incomplete hypothetical question which failed to account for several work-preclusive limitations identified in CRNP Pra in her medical source statement. The Commissioner contends that the undiscussed limitations were not credibly established, thus were properly excluded from the ALJ's hypothetical question.

It is well-established in that the ALJ must accurately convey to the VE all of a claimant's "credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Limitations that are "credibly established" are medically supported and otherwise uncontroverted in the record. *Id.* Similarly, where limitations are medically supported but are contradicted by other evidence, the ALJ may choose to credit or reject such limitations, but cannot reject such evidence "for no reason or for the wrong reason." *Id.* (*quoting Mason*, 994 F.2d 1058 at 1066). When limitations that are credibly established, or credited by the ALJ, exist but are not included in the hypothetical posed to the VE, the ALJ is precluded from relying on the VE's response to support his or her decision. *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)("the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical impairments."). Thus, the formulation of a proper hypothetical question has a dual significance in social security proceedings. As an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. More fundamentally,

-14-

however, an erroneous or inadequate hypothetical question undermines the reliability of any residual function capacity determination since "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

With this framework in mind we turn our attention to the consideration of the particular limitations that Plaintiff claims were improperly disregarded by the ALJ.  Plaintiff identifies four such limitations: that Plaintiff must move/walk away from his workstation for five minutes after sitting for thirty minutes; that Plaintiff would need four ten-minute unpredictable rest periods during each work shift beyond the standard breaks; that Plaintiff could not use his arms out in front of his body more than 25%, or reach overhead more than 10%, of each eight-hour workday; and, that Plaintiff would miss work more than two days per month due to his impairments.  Further, the VE testified that several of these limitations would preclude the performance of other work.  For example, the VE testified that it would exceed most employers' tolerance to accommodate breaks beyond two fifteen-minute breaks and one thirty-minute break, or to allow an employee to walk away from his work station four or more times per day. (TR 94).  The VE also stated that, when coupled with Plaintiff's other limitations, there would be no competitive employment for an individual who could lift occasionally, but only to the chest level. (TR 97).  (TR 95-96).  Thus, if credited, several of the limitations identified by CRNP Pra could preclude the performance of any "other work."  Plaintiff contends that because these limitations are medically supported by CRNP Pra's medical source statement, the ALJ's failure to properly explain her consideration these limitations undermines the reliability of her conclusion at step five of the sequential evaluation process.

-15-

The ALJ's discussion of the medical opinion evidence of record was limited to the following paragraph:

> Significant weight is afforded to the opinions of Allison Pia [sic], CRNP, a treating source, and Brian D'Eramo, D.O., an examining source, suggesting that the claimant is capable of performing a range of light work with postural and environmental limitations.  These opinions were rendered by treating and examining sources, are generally consistent with each other and are supported by the objective medical findings.  Furthermore, these opinions account for the medication side effects and pain alleged by the claimant.

(TR 18).  The Commissioner asserts that none of the evidence indicated that Plaintiff had a medical condition that would require him to take four unscheduled breaks per day, and that recent diagnostic tests did not reveal any significant degeneration of Plaintiff's cervical spine. We are compelled to reject the Commissioner's assertions for two reasons.  First, because it is the role of this Court to review the final decision of the Commissioner as written, not reasons advanced for the first time when a claimant seeks judicial review. While we agree that it was clearly within the ALJ's authority to reject or discount portions of CRNP Pra's medical source statement if she found them to be unsupported, the decision as written does not contain any explanation for the ALJ's omission of these impairments.  Second, we must reject this argument, in part, because the Commissioner supports her position with evidence that was not introduced into the record until after the ALJ rendered her decision.

Accordingly, because the ALJ failed to offer any discussion of the potentially work-preclusive limitations identified in CRNP Pra's medical source statement, we cannot ascertain whether these limitations were reasonably discounted and could be properly excluded from the hypothetical questions posed to the VE.   Instead we are left to wonder whether these limitations were considered and rejected, considered and discounted, or not considered at all

when the ALJ accorded "significant weight" to CRNP Pra's medical source statement.  We therefore cannot conclude that her ultimate conclusion at step five, or RFC assessment, is supported by substantial evidence.

## VI.    RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that the Plaintiff's appeal from the final decision of the Commissioner of Social Security denying Plaintiff's application for benefits be **VACATED** and **REMANDED** to the ALJ for a new hearing.

 **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 10,  2014**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID E MOATS | : | CIVIL NO: **3:14-CV-00411** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **November 10 , 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 10, 2014**

-18-